[L. A. No. 11598. In Bank.—September 22, 1932.]

SOPHIE BRITTON, Appellant, v. FRANK BRYSON, as Administrator, etc., et al., Respondents.

Leland J. Allen for Appellant.

Dana R. Weller, Everett W. Mattoon, County Counsel, and S. V. O. Prichard, Deputy County Counsel, for Respondents.

THE COURT.—Action to quiet title to certain lots situated in the county of Los Angeles was commenced by plaintiff, Sophie Britton, against John Henry Britton, as her husband, and one D. C. Hammell. Immediately prior to the institution of this action John Henry Britton had conveyed said property to said D. C. Hammell by a gift

deed, and plaintiff sought, as the wife of John Henry Britton, to have said property declared to be the community property of herself and John Henry Britton, and a judgment that D. C. Hammell owned no interest therein. During the pendency of the action John Henry Britton died, and the administrator of his estate, Frank Bryson, was substituted in his place and stead. It appears that Sophie Britton and John Henry Britton were married in the year 1873. Five children were born as the result of that union. In March, 1891, while the parties were both domiciled in Colorado, John Henry Britton secured a decree of divorce from his wife, in the county of Bent, state of Colorado. This decree dissolved the marriage relation and in addition awarded to the wife the care, custody and control of the five children, alimony of $40 per month, and required the plaintiff in said action, John Henry Britton, to deed to defendant therein, Sophie Britton, certain real property situated in Arapahoe County, Colorado. It is the claim of Sophie Britton that this decree was fraudulently obtained by John Henry Britton, as they were both residents of Arapahoe County, not Bent County, Colorado, at that time, that she was never served with summons, and that although an attorney, one W. B. Lourance, purported to act for her in the matter, she knew nothing of the matter and, in fact, knew nothing of the procurement of the decree until after the death of her husband, John Henry Britton, during the pendency of this action. She further claims that the terms of the decree were never carried out by John Henry Britton, either as to the deeding of the Colorado property to her or the payment of the alimony, and that there were no circumstances to indicate to her or to arouse her suspicions that any divorce had been procured by her husband. The next month following the procurement of the divorce, in April, 1891, John Henry Britton married Rose E. Dixter in the state of Texas. Thereafter by deed dated May 13, 1916, he acquired in his own name the property which is the subject of this action. On March 2, 1923, John Henry Britton executed a deed conveying his interest in this and other described property to Rose E. Britton. This deed was recorded on May 31, 1923. Subsequently on June 2, 1924, John Henry Britton executed another deed conveying this particular property to Rose Britton as her

sole and separate property. This deed was recorded on July 29, 1924. On June 26, 1924, Rose Britton reconveyed said property to John Henry Britton as his separate property. This deed was recorded January 2, 1926. On April 19, 1926, John Henry Britton executed a deed of gift of said property to D. C. Hammell, reserving to himself the "exclusive possession, use and enjoyment in his own right, of the rents, issues and profits thereof", and further reserving the right to revoke said deed and sell and convey said property. Subsequently on May 12, 1926, he executed another deed of said property to D. C. Hammell. This was the usual form of gift deed and contained no reservations. This deed was recorded May 14, 1926. When this suit was instituted on August 6, 1926, John Henry Britton appeared first by demurrer and then by answer. An inspection of his pleadings shows that there was no mention therein of the divorce procured by him in 1891, and it was not until the answer of the administrator of his estate had been filed that this decree of divorce was set up as a defense. During the pendency of this action, plaintiff instituted in Colorado a suit in equity in which Frank Bryson, as administrator of the estate of John Henry Britton, and the five children of said couple, as the heirs at law of said John Henry Britton, were named as defendants. By this action, which was commenced in Bent County, Colorado, she sought to have set aside the former decree of divorce granted by said court upon the ground that it had been fraudulently procured by her husband without service upon her. Substituted service was procured upon Frank Bryson, administrator of his estate, in California, and the five children accepted service. In that action she proved to the satisfaction of the court and the court specifically found that fraud had been perpetrated by John Henry Britton upon the "County Court of Bent County, State of Colorado" by the filing of a purported service of summons and a representation that the said W. B. Lourance, an attorney, represented the said Sophie Britton, when in fact no service had been made upon Sophie Britton and W. B. Lourance did not in fact represent Sophie Britton, and had no authority to represent her. Judgment was entered on July 16, 1928, in favor of the plaintiff that "the purported decree of divorce entered in Judgment Book 2, page 272

of the County Court of Bent County, State of Colorado, is set aside and decreed void and of no force and effect whatsoever; that the relationship of husband and wife between John H. Britton and Sophie Britton be decreed as if the said purported decree had not been entered".

At the trial of the instant action there were introduced by stipulation of both parties a copy of the decree of divorce procured by John Henry Britton from plaintiff in 1891, and likewise a copy of the decree of the County Court of Bent County, Colorado, of July 16, 1928, setting aside the former decree of divorce secured by John Henry Britton from Sophie Britton in 1891. There were also introduced in evidence the depositions of Sophie Britton and her daughter, Pearl Britton. The deposition of the former contained a statement that she had never been served with a summons in a divorce action at any time, that she had never secured a divorce, and that continuously from December 4, 1873, until the death of John Henry Britton on June 29, 1927, she was his wife. It was also stipulated that a claim for $17,000, arrearage of alimony had been filed by plaintiff against the estate of John Henry Britton, which claim was to be dismissed if the judgment in this action were favorable to the plaintiff.

Upon the submission of the case herein, which was tried without a jury, the court, apparently upon the theory that the judgment in the divorce suit was binding upon it by virtue of the full faith and credit clause of the United States Constitution (art. IV), and that the judgment in the later suit setting aside said former decree was an idle act—an absolute nullity—gave judgment for the defendants. From this judgment plaintiff prosecutes this appeal.

It is at once apparent that the answer to the question of whether or not the property in controversy ever was the community property of the plaintiff and the defendant, John Henry Britton, depends upon the binding effect upon the courts of this state of the two decrees of the Colorado court introduced in evidence by stipulation. At the outset it should be stated that as we understand the record the stipulation with reference to the introduction of each of these decrees in evidence went only to the authenticity of the decrees as judgments of the County Court of Bent County, Colorado, and no further. The stipulation did not

concede the jurisdiction of the court in either action, nor the validity and binding effect of either judgment. It is obvious that plaintiff did not intend by the stipulation to concede the jurisdiction of the Colorado court to render the judgment therein procured, since by the same stipulation she was introducing in evidence a subsequent decree the very purpose of which was to conclusively prove that the court in the former case was without jurisdiction. Neither did the defendants intend to concede jurisdiction to the court to enter the later decree declaring void the former divorce decree, since their sole contention upon this appeal is that said decree is powerless to affect said former decree by reason of the fact that the court in the later action never obtained proper jurisdiction, inasmuch as no personal jurisdiction was obtained of Frank Bryson, administrator of the estate of John Henry Britton, he having been served by substituted service in California.

█ Although it is well established that each of the judgments rendered by the County Court of Bent County, Colorado, *if a valid judgment,* ·is binding upon the courts of this state by virtue of the oft-quoted provision of article IV of the Constitution of the United States that, ''Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state,'' it is also well established by a long line of decisions of the United States Supreme Court ''that the full faith and credit clause and the statutes enacted thereunder, do not apply to judgments rendered by a court having no jurisdiction of the parties or subject-matter, or of the *res* in a proceeding *in rem*''. (*D'Arcy* v. *Ketchum,* 11 How. 165 [13 L. Ed. 648]; *Thompson* v. *Whitman,* 18 Wall. 457 [21 L. Ed. 897]; *Reynolds* v. *Stockton,* 140 U. S. 254 [35 L. Ed. 464, 11 Sup. Ct. Rep. 773]; *Bigelow* v. *Old Dominion Copper Co.,* 225 U. S. 111, 134 [Ann. Cas. 1913E, 875, 56 L. Ed. 1009, 32 Sup. Ct. Rep. 641].) █ And it is equally well established that ''the jurisdiction of the court by which a judgment is rendered in any state may be questioned in a collateral proceeding in another state, notwithstanding the provision of the fourth article of the Constitution and the law of 1790 and notwithstanding the averments contained in the record of the judgment itself''. (*Thompson* v. *Whitman, supra; National Exch. Bank* v.

*Wiley,* 195 U. S. 257, 270 [49 L. Ed. 184, 25 Sup. Ct. Rep. 70].)

The determination of the controversy herein therefore depends upon the answers to the questions: Did the County Court of Bent County, Colorado, have jurisdiction to make and enter the judgment of July 16, 1928, setting aside and declaring void the decree of divorce granted by it in 1891? Did the County Court of Bent County, Colorado, have jurisdiction to make and enter the judgment of divorce granted by it to John Henry Britton in 1891? It is obvious that if the answer to the first question be in the affirmative it will not be necessary for us to consider the second question by reason of the fact that the judgment of July 16, 1928, if valid and of binding effect wiped out and completely nullified the effect of the decree of divorce of 1891. We will, therefore, address ourselves to a consideration of the question of whether or not the Colorado court had jurisdiction to render the judgment of July 16, 1928, annulling the decree of divorce.

It is argued that the action in the Colorado court to set aside the decree of divorce formerly granted by the same court was an action *in personam,* that jurisdiction could only be obtained by personal service within the state of Colorado, that jurisdiction was attempted to be obtained by substituted service upon the administrator of the estate of John Henry Britton in California but that such service was not sufficient to give jurisdiction inasmuch as substituted service in a personal action is not permitted to extend to persons beyond the state and the administrator could not, even by consent, confer jurisdiction upon the Colorado court by accepting service or by voluntary appearance outside of the state. If the action be a personal action, it is of course necessary that personal service upon the proper parties be made within the state of Colorado and service by publication or substituted service in another state will not suffice to confer jurisdiction upon the court. (*Pennoyer* v. *Neff,* 95 U. S. 714, 727 [24 L. Ed. 565].) On the other hand, if the action be one *in rem,* personal jurisdiction of all parties litigant is not necessary, it being sufficient if the courts have jurisdiction of the moving parties and of the *res* in controversy. In cases involving the marital status of parties in which that status is sought to be destroyed, it has been held that jurisdiction to render a valid judgment by

the court of the matrimonial domicile of the parties having jurisdiction of the moving party was gained by service by publication upon the defendant, a resident of another state, upon the theory that the court had jurisdiction of the moving party and the *res*—the marital status—and that the judgment so obtained was entitled in all other states to full faith and credit. (*Atherton* v. *Atherton*, 181 U. S. 155 [45 L. Ed. 794, 21 Sup. Ct. Rep. 544]; *Thompson* v. *Thompson*, 226 U. S. 551 [57 L. Ed. 347, 33 Sup. Ct. Rep. 129].) It is argued in the instant case that by virtue of the death of the husband, the *res*—that is to say, the marital status—ceased to exist, and any action involving the marital status of the parties must necessarily cease to·be an action *in rem* and becomes one *in personam*. We do not think this necessarily follows. ▪ It is now well settled in California that subsequent to the death of one of the parties, the other may have said decree set aside upon proof that the judgment of divorce was procured by extrinsic fraud. (*McGuinness* v. *Superior Court,* 196 Cal. 222 [40 A. L. R. 1110, 237 Pac. 42]; *Tomb* v. *Tomb,* 120 Cal. App. 438 [7 Pac. (2d) 1104].) It is evident, therefore, that regardless of the existence of the *res*—that is to say, the marital status —the court had sufficient jurisdiction to render a valid judgment with reference thereto. It would seem, therefore, that the power to render such a judgment is based not upon the continued existence of the marital status but upon the court's control of its own records, and its inherent power to purge its records of judgments obtained by fraud. In other words, in such an action the *res* is not the marital status, which has ceased to exist, but the former judgment itself over which the court continues to retain power. That this is so is, we think, indicated by the language of Mr. Justice Richards in the case of *McGuinness* v. *Superior Court, supra.* In that case the wife after the death of her husband sought and secured a decree setting aside a final decree of divorce entered by her husband without her knowledge and without her consent subsequent to their reconciliation following the entry of an interlocutory decree of divorce. It was there urged that the divorce action being one brought solely to sever the marriage relation between the parties thereto, the said action abated upon the death of the party defendant subsequent to the entry of the final

decree and the trial court thereby lost jurisdiction to take any action whatever in said case. Mr. Justice Richards, speaking for the court, said: "The plaintiff by her own motion made in the divorce action is not seeking to reopen said action for the purpose of further litigating the question as to whether she, or the defendant either, is entitled to a divorce. That question has been settled by the defendant's death and as to it or any further litigation regarding it in said action, it has been abated. But the plaintiff, notwithstanding the abatement of the action in so far as the issues therein are involved, is seeking to invoke the power of the court over its own records, by suggesting and offering to show .to the court that it has been imposed upon by the extrinsically fraudulent acts and concealments of the defendant. . . . This is the principal purpose of her said motion. . . . To such a purpose the death of the defendant in said action is merely incidental and is in nowise controlling upon the power of the court to purge its records of orders and decrees which the court has been wrongfully misled into making through the fraudulent imposition of a party to an action pending, at the time of such imposition, before it. To hold that the party having accomplished such imposition could by dying deprive the court of the right when properly advised to so purge its own records would be to abridge to the point of denial one of the most salutary of the inherent powers of the court." This case involved no question of substitution of service, but we are of the opinion that if in that case the court retained jurisdiction to purge its records of a judgment fraudulently procured despite the death of the defendant, the Colorado court retained jurisdiction to purge its records of a judgment fraudulently procured despite the death of the defendant while domiciled in another jurisdiction. In the instant case, the plaintiff herein did not seek in the Colorado court to relitigate the question of whether or not her husband was entitled to a decree of divorce, she simply sought to invoke the power of the court to wipe from its records a judgment fraudulently obtained against her, which if not wiped out would seriously affect her property rights. As said in the *McGuinness* v. *Superior Court* case, *supra*, "to such a purpose the death of the defendant in said action is merely incidental". Had her husband been alive at the time of the institution of the suit in equity in

the Colorado court, she could not have secured personal service upon him in Colorado, but would have had to seek service by publication. If, as was said in the *McGuinness* v. *Superior Court* case, *supra,* the defendant could not deprive the court of jurisdiction by dying, we do not think he could deprive the court of jurisdiction by moving to another state.

■ If it be conceded, and there can in fact be no question about it for both text-books and reports are replete with examples thereof, that the court has the inherent power to correct its records and purge them of judgments fraudulently obtained, it follows we think that such power must of necessity be plenary and not limited either by the nature of the subject matter of the controversy, or the presence or absence of the guilty party from the territorial jurisdiction of the court. ■ In fact, it has been held that such a judgment is not a real judgment and the court could set aside its own judgment of its own motion for lack of jurisdiction to enter it in the first instance. (*May* v. *Roberts,* 133 Or. 643 [286 Pac. 546].)

■ It is admitted that substituted service by personal service upon the administrator of the estate of John Henry Britton was obtained. This service is equivalent to service by publication. (Sec. 413, Code Civ. Proc.) It is also admitted that each of the five children of John Henry Britton as his heirs at law accepted service. It, therefore, appears that all who were entitled to notice did, in fact, have such notice.

Our conclusion, therefore, is that the County Court of Bent County, Colorado, had sufficient jurisdiction to render the judgment which it did render on July 16, 1928, setting aside and expunging from its records the decree of divorce obtained in March, 1891, by John Henry Britton from Sophie Britton. And it follows, as a consequence, that the marital status of John Henry Britton and Sophie Britton was in fact never destroyed and that in the absence of evidence to the contrary, the property thereafter acquired by John Henry Britton in his own name in the state of California became upon such acquisition the community property of both John Henry Britton and Sophie Britton.

Judgment is reversed.

Rehearing denied.