[Civ. No. 14570. Second Dist., Div. One. Mar. 19, 1945.]

FAYETTA LENORA RHEA, Respondent, v. H. C. MILLSAP, as Special Administrator, etc., Defendant; VIVIAN RHEA, Appellant.

Robert J. Sullivan for Appellant.

William Ellis Lady for Respondent.

YORK, P. J.—The facts which form the basis of the instant litigation appear to be briefly as follows:

On or about March 3, 1940, Robert Stephen Rhea and respondent Fayetta Lenora Rhea were married at Covington, Kentucky; that on September 2, 1941, said respondent filed suit for divorce against Robert Stephen Rhea and the interlocutory decree therein was entered October 3, 1941. Thereafter, during the month of June, 1942, "Fayetta Lenora Rhea and Robert Stephen Rhea, had a reconciliation of their differences, and agreed to resume marital relations, and pursuant thereto and in accordance therewith they did resume marital relations . . . and continued to live together as husband and wife at all times thereafter until about January 1, 1943, when the said Robert Stephen Rhea, as a Second Lieutenant in the Air Force of the United States Army was ordered to service in the Arctic Circle." Being unaware of the reconciliation of the parties to the divorce action, respondent's attorney made application to the trial court for the entry of the final decree of divorce which was duly entered on October 13, 1942. On October 17, 1942, said attorney advised respondent of his action by letter, enclosing a copy of said final decree. Respondent testified that upon receipt of this communication, Robert Stephen Rhea took it to an attorney in San Francisco, who told him to disregard it; that it was unnecessary to do anything about the final decree of divorce as long as they were reconciled. On December 30, 1942, Lieutenant Rhea signed an authorization for an allotment of $100 per month to respondent (Plaintiff's Exhibit 15) and on the same day executed a change of beneficiary designating his wife, Mrs. Faye Rhea, and his mother, Mrs.

Dorothy Black, as beneficiaries of his National Service Life Insurance (Plaintiff's Exhibit 14).

Respondent testified further that in the latter part of December of 1942, Lieutenant Rhea told her he expected to get his orders for overseas duty and it was agreed between them that respondent should come to Los Angeles to stay with her sisters while her husband was away; that she, Lieutenant Rhea and one of her sisters drove from San Francisco to Los Angeles arriving at the latter place around 11 o'clock in the morning of January 1, 1943; that they went to the apartment of another sister at 420 South Union Avenue; that Lieutenant Rhea did not stay there "because my sister just had the one bedroom in the apartment, and so he left about 2:00 o'clock to go down to a hotel room, and he said he would come back and call for me, and I was to stay and wait for him." That he telephoned her three days later and that she did not hear from him again until January 14, 1943, when he telephoned her from Seattle and told her he had been married. On February 13, 1943, respondent received a telegram from his commanding officer notifying her of Lieutenant Rhea's death.

Immediately after learning of Lieutenant Rhea's remarriage, respondent consulted her attorney and was advised that the final decree of divorce should be set aside so long as she and her husband had been living together. Accordingly, on February 16, 1943, respondent filed her petition to set aside the interlocutory and final decrees and to dismiss the divorce action, and an order to show cause therein was served upon Vivian Rhea, the second wife, who filed her answer thereto. Thereafter, an order was made substituting as defendant in the divorce action H. C. Millsap, Special Administrator of the Estate of Robert Stephen Rhea, deceased, whereupon respondent filed a second petition to set aside the final and interlocutory decrees and to dismiss the divorce action, and another order to show cause was served on said Vivian Rhea.

The matter came on for hearing, and the trial judge made complete findings of fact from which he drew the following conclusions of law:

"1. That it should be ordered, adjudged and decreed that the entry of the final decree of divorce herein on or about the 13th day of October, 1942, was the result of a fraud committed and practiced upon the court itself, in this, that at the time

of the signing and entry of said final decree of divorce it was represented to the Court that there had been no reconciliation of plaintiff and defendant Robert Stephen Rhea, and that plaintiff and defendant Robert Stephen Rhea were living separate and apart; that the aforesaid representations were unwittingly made by the attorney for the plaintiff at a time when he himself believed that there had been no reconciliation of plaintiff and defendant . . . and that (they) were living separate and apart, whereas in truth and in fact when the representations aforesaid were made by said attorney, plaintiff and defendant Robert Stephen Rhea had had a reconciliation and at said time they had become reconciled and were living together as husband and wife and continued to live together as husband and wife until on or about January 1, 1943; that said attorney would not have made the representations aforesaid or requested the entry of said final decree of divorce if at said time he had known that plaintiff and defendant Robert Stephen Rhea had become reconciled and were then living together as husband and wife, and likewise the Court would not have signed and entered said final decree of divorce if it had been disclosed to the Court at said time that plaintiff and defendant Robert Stephen Rhea had become reconciled and were then living together as husband and wife, and by reason of all the matters and things aforesaid a fraud was committed and practiced upon the Court and by reason thereof said final decree of divorce should be and is hereby vacated and set aside.

"2. That it should be further ordered, adjudged and decreed that the final decree of divorce entered herein was entered through mistake, inadvertence, fraud, surprise and excusable neglect as well as the fraud practiced upon the Court as found in the findings on file herein and hereinbefore adjudged, and that it should be and is hereby vacated and set aside as of the date of entry thereof, to-wit, October 13, 1942, and that the interlocutory decree of divorce should be and is hereby vacated and set aside and that the above entitled action should be and the same is hereby dismissed.

"3. That it should be further ordered, adjudged and decreed that the said Fayetta Lenora Rhea do have and recover of and from Vivian Rhea, also known as Vivian Ahlers, the costs and disbursements incurred herein. . . ."

From the judgment which was thereafter entered pursuant

to said conclusions of law, Vivian Rhea prosecutes this appeal, and as well from the order denying her motion to vacate the judgment and for the entry of a new and different judgment under sections 663 and 663a of the Code of Civil Procedure.

■ While appellant's opening brief urges that the instant proceeding under an order to show cause to set aside the interlocutory and final decrees of divorce was improper and not within the jurisdiction of the trial court, her closing brief concedes that three of the cases cited by respondent are in point, to wit: *Aldrich* v. *Aldrich*, 203 Cal. 433 [264 P. 754]; *Tomb* v. *Tomb*, 120 Cal.App. 438 [7 P.2d 1104], and *Raps* v. *Raps*, 20 Cal.2d 382 [125 P.2d 826].

In the Aldrich case it was held that a trial court has inherent power to set aside a judgment obtained through a fraud committed upon it, and its right to do so is not derived from section 473 of the Code of Civil Procedure, nor limited to the time therein specified; and that the defendant in such a case has a remedy in a new equitable proceeding to set aside the judgment on the ground of fraud but notwithstanding that fact a motion to set the same aside in the original action is proper.

In *Tomb* v. *Tomb, supra,* at pages 441, 442, it is stated: "It is a well-recognized principle that a court of general jurisdiction has the inherent power to set aside a judgment obtained through fraud practiced upon the court. (*McKeever* v. *Superior Court*, 85 Cal.App. 381 [259 P. 373]; *McGuinness* v. *Superior Court*, 196 Cal. 222 [40 A.L.R. 1110, 237 P. 42, 45].) . . .

"In the case now under consideration the court had jurisdiction to set aside the interlocutory and final decrees, being satisfied that they were obtained through fraud practiced by the husband. . . . The fraud alleged in the motion to set aside the interlocutory and final decrees, is that the husband by the said reconciliation led respondent to believe that no further proceedings would be taken in the divorce action, and then took advantage of that situation and without the knowledge of respondent and without informing the court that there had been a reconciliation between him and his wife secured first the interlocutory decree and thereafter secured the final decree."

In *Raps* v. *Raps*, 20 Cal.2d 382, 387 [125 P.2d 826], the Supreme Court held that "The affidavits presented by Elias

Raps on the hearing of the motion alleged facts sufficient to establish that the plaintiff Rose Raps had surreptitiously secured the entry of the divorce decrees after there had been a reconciliation between the spouses. In granting the motion the court necessarily determined that the decrees were obtained by means of extrinsic fraud practiced upon the husband and the court and that they should be vacated. The order was within the jurisdiction of the court on the facts presented. (*Britton* v. *Bryson,* 216 Cal. 362 [14 P.2d 502]; *McGuinness* v. *Superior Court,* 196 Cal. 222 [237 P. 42, 40 A.L.R. 1110].)''

It was held in *McGuinness* v. *Superior Court,* 196 Cal. 222, 229, 236 [237 P. 42, 40 A.L.R. 1110], that the facts therein presented a case of extrinsic fraud where it appeared that after the entry of the interlocutory decree of divorce, the parties resumed marital relations and during said time the husband obtained a final decree of divorce without the knowledge of the wife. The Supreme Court there stated: ''We are therefore satisfied that notwithstanding the fact that the divorce action has abated in so far as any further trial or determination of the issue as to the marital relations of the parties to it is concerned [through the death of the husband], the court retained its inherent power and jurisdiction to conduct the investigation into the integrity of its records which the plaintiff's motion suggests and which the court of its own motion is proposing to undertake.'' (See, also, *Britton* v. *Bryson,* 216 Cal. 362, 369 [14 P.2d 502].)

In the case of *Gump* v. *Gump,* 42 Cal.App.2d 64, 69 [108 P.2d 21], appellant argued that the relief granted, vacating a final decree of divorce, was improper, because ''though the action purported to be in equity, it sounded in law and should have been treated as a motion made under section 473, Code of Civil Procedure, to set the decree aside.'' The court there held that a suit in equity may be prosecuted to vacate a judgment procured by extrinsic fraud, even though there may be available the remedy by motion under section 473, Code of Civil Procedure.

In the instant proceeding the trial court found upon substantial evidence that a reconciliation was effected between Robert Stephen Rhea and Fayetta Lenora Rhea about the months of June or July, 1942, and that subsequent thereto a final decree of divorce was entered and a copy thereof sent

to the respondent, but that said respondent "Fayetta Lenora Rhea took no steps to have it vacated and set aside until sometime in January or February, 1943, and the reason that said Fayetta Lenora Rhea did not take any steps prior to that time was because of the fact that she was lulled into a sense of security by statements said Robert Stephen Rhea made to her that the aforesaid reconciliation made said interlocutory decree of divorce ineffective for any purpose and that said final decree of divorce was likewise ineffectual for any purpose, and in that connection the court further finds that subsequent to the entry of said final decree of divorce, and after knowledge of the entry thereof and the receipt of a copy of said final decree of divorce, said Robert Stephen Rhea continued to conduct himself as though said interlocutory decree of divorce had been vacated and said final decree of divorce had not been entered . . . that any lack of diligence on the part of said Fayetta Lenora Rhea to have said final decree of divorce set aside was due to the conduct and statements of said Robert Stephen Rhea as hereinbefore found and not otherwise."

Applying the foregoing principles of law to the facts presented herein, it is obvious that the trial court had jurisdiction under the procedure followed by respondent to render the judgment appealed from.

The question of the innocence and good faith of appellant is not material, because as so aptly stated by the Supreme Court in *Nelson* v. *Nelson,* 7 Cal.2d 449, 452 [60 P.2d 982], "While it is regrettable that defendant had remarried in the interim, this fact, standing alone, cannot serve to deprive plaintiff of the relief to which she is entitled. Moreover, this fact was before the court below and was undoubtedly weighed by it in determining the cause. It is unfortunate that one of two apparently innocent persons must suffer by reason of defendant's fraud."

For the reasons stated, the judgment and order appealed from are, and each of them is, affirmed.

Doran, J., and White, J., concurred.