**BOWLES v. HUDSPETH et al.**

Civ. No. 2729.

District Court, D. Oregon.

Sept. 11, 1945.

Jerome S. Bischoff, Chief, Lumber Enforcement Unit, Franz E. Wagner, Chief Dist. Enforcement Atty., Norman T. J. McCaffery, Dist. Enforcement Atty., and Victor E. Harr, Asst. U. S. Atty., all of Portland, Or., for plaintiff.

James Arthur Powers, of Portland, Or., and Geo. H. Brewster, of Redmond, Or., for defendants.

McCOLLOCH, District Judge.

I wonder if you realize what you are talking about when, in eighty-four District Courts in the country you put thousands and thousands, accumulating over a period of years, of businessmen under the tutelage of Judges to run their business in a certain way. You just used the expression "put him under the control of the Court." If you had just a hundred lumbermen under the control of this Court, if you really mean what you are saying, there would not be time to do anything else except go in the lumber business.

One of the modern miracles is the utilization of the statutory injunction by every Government agency as a means of enforcing its legislation.[1] You OPA lawyers are in Government service for a brief time. You will drop out and return to private practice and this will all be like a dream to you, when you get to practicing law for yourselves, but here I am expected to stay permanently running the Hudspeth Lumber Company, along with other business enterprises, to make sure they don't cut dimension lumber one and one-half inch dressed on one side, instead of one and five-eighths.

Now that is the theory of the thing, and in this court we are very reluctant to add to the accumulated files in the Clerk's office of the hundreds, maybe thousands of injunctions that have been asked, and in many cases have been given, to compel compliance with technical business practices.[2]

---

[1] A cycle of suspicion, if not abhorrence, of the injunctive process seems to have ended with the passage of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq. A cycle of utilization of restraining orders and injunctions as a preferred method of enforcing public statutes seems to have begun with the stepped-up activity of the Anti-Trust Division of the Department of Justice in the immediate pre-war years; in the administration of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and in the war time enforcement of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., by the OPA legal staff which was set up separate from the Department of Justice. Toward the end of the war, OPA cases were being filed in the Federal District Courts alone at the rate of 2750 per month. Quarterly Report 6/30/45 of the Administrative Director United States Courts. This is the full normal civil capacity of the United States District Courts. See any Administrator's report before the war time period.

[2] Few discussions of the very modern subject of statutory injunctions are to be

So I repeat what I said a minute ago, before I sign the form of injunction you have prepared, as in every other injunction case—I am not treating it any differently—I will consider very carefully the language of the injunction, even though you have stipulated to it. I may sign the injunction based upon the stipulation, or I may require testimony.[3]

A potential prosecution for criminal contempt inheres in every injunction that is issued.[4] It is possible that some day I will come out here and a man, whose name I have forgotten, will be in for violation of an injunction issued five or ten years ago. I will be asked to fine him, possibly to send him to jail. Every time I sign one I must keep that in mind. It is a very convenient temporary device for the Government agency; I understand that. You can then lay the case aside and start another. But when we sign it we take it on forever. We are married to it; and so, as in the marriage engagement, we enter into it solemnly.[5] Just be-

---

found in the reports or in the law magazines. "The Permissible Scope of Statutory Injunctions" in 54 Yale Law Journal 141 (1944) is an up-to-date article. To the cases cited in the article may be added: Fleming, Adm'r v. Salem Box Co., D.C., 38 F.Supp. 997, 999, an opinion by Judge James Alger Fee, my learned colleague; Bowles v. Town Hall Grill, Inc., 1 Cir., 1944, 145 F.2d 680; Bowles v. Sacher et al., 2 Cir., 1944, 146 F.2d 186, 187, affirming Brown v. Sacher, D.C., 53 F.Supp. 77; Regal Knitwear Co. v. N. L. R. B., 1945, 324 U.S. 9, 65 S.Ct. 478, 479, discussing the use of the phrase "successors and assigns" in injunction decrees; Bowles v. W. W. Elzea, Inc., D.C., 1945, 59 F.Supp. 1012, 1022, next to last par.; N. L. R. B. v. Lipshutz, 5 Cir., 1945, 149 F.2d 141, 142, last par.; Associated Press v. United States, 1945, 326 U.S. 1, 65 S.Ct. 1416, last par. of majority opinion; Bowles v. 870 Seventh Avenue Corporation, 2 Cir., 1945, 150 F.2d 819, 822, last par. May Department Stores Co. v. N. L. R. B., — U.S. —, 66 S.Ct. 203.

3 The money judgment was entered as stipulated and the following: "Until the National peace time policy regarding continuance of price control in the lumber industry is determined, jurisdiction and decision as to the issuance of an injunction will be reserved."

A typical problem as to form of an injunction decree was presented in this court early in the war. Henderson, Adm'r OPA v. Swift & Company, Civ. No. 1354.* This was one of a number of identical cases brought by the OPA Administrator in the United States District Courts in twenty-four States where the defendant operated. A form of consent decree tendered was rejected in this court. The rejected form provided that the temporary restraining order, which had previously been granted without notice, should remain in a state of suspended animation, subject to automatic revival, upon the filing of an affidavit asserting failure in any of the twenty-four plants to grade and stamp beef and veal by use of the official graders of the Agricultural Marketing Administration. The

form of injunction adopted was limited to defendant's future conduct within the jurisdiction of the court.

4 "To make the infraction of a criminal statute also a contempt of court is essentially an invention to evade the safeguards of criminal procedure and to change the tribunal for determining guilt". Frankfurter and Greene, "The Labor Injunction" 107; citing to the same effect the address (1912) of the President of the American Bar Association. Compare as to jury trial Nye v. United States, 313 U.S. 33, 47, 53, 61 S.Ct. 810, 85 L.Ed. 1172; In the Matter of Michael, 66 S.Ct. 78.

Excepting Walling, Adm'r v. Men's Hats, Inc., D.C., 1945, 61 F.Supp. 803, 804[1], it has yet to be ruled, I believe, whether the violation of a statutory injunction (final decree), obtained at the instance of the Government, or one of its agencies, is criminal or civil contempt, or whether it may be one or the other, depending on the circumstances. Cf. McCrone v. United States, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108 (civil), opinion by Mr. Justice Black; Nye v. United States, 313 U.S. 33, 42, 61 S.Ct. 810, 85 L.Ed. 1172 (criminal), opinion by Mr. Justice Douglas; see "Civil and Criminal Contempt of Court", 46 Yale L.J. 326, another excellent article. "Contempt of Injunctions, Civil and Criminal", 43 Col. Law Rev. 780 (1943) by Joseph Moskovitz, a former editor of the Review, is an excellent collection of the cases.

In this connection, it must be kept in mind that multitudinous injunction decrees now in District Court files enjoin violations of administrative regulations "made or to be made", as well as violations of the statutes involved.

5 Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754, relieved District Judges of the administrative threat, which had been developing, that the trial judge had no discretion about issuing an injunction when a statutory violation was shown. See comment of Arnold, A. J., diss. in Rainbow Dyeing & Cleaning Co. v. Bowles, 1945, — U.S.App.D.C. —, 150 F.2d 273.

The discussion from the Supreme Court bench during the argument in Hecht Co. v. Bowles needs to be preserved permanently in the reports as a highlight in the present

---

* No opinion for publication.

cause it is handy to you, and because the defendant is willing to do it, that is not the end of it at all.

day reexamination of the function of the judiciary. The discussion is to be found in the United States Law Week for February 8, 1944 (12 LW Sec. 3, 3257).

The Ninth Circuit Court of Appeals, by Judge Bone, lately held that a District Judge need not issue an injunction because a defendant consented to its issuance. Bowles v. Huff, 1944, 146 F.2d 428, 429, last par.