ASSMANN v. FLEMING, Temporary Controls Adm'r, et al.

No. 13441.

Circuit Court of Appeals, Eighth Circuit.

Jan. 29, 1947.

---

John C. Mullen and Thomas J. Sheehan, Jr., both of Omaha, Neb. (Gerald M. Mullen, of Omaha, Neb., on the brief), for appellant.

Jacob W. Rosenthal, Atty., OPA, (William E. Remy, Deputy Commissioner of Price Administration for Enforcement, David London, Director, Litigation Div., .and Albert M. Dreyer, Chief, Appellate Branch, all of Washington, D.C., George E. Leonard, Regional Litigation Atty., of New York City, and Allen Wilson, Sp. Trial Atty., of Omaha, Neb., on the brief), for appellee Temporary Controls Administrator.

Alexander McKie, Jr., and Barton H. Kuhns, of Finlayson, McKie & Kuhns,

both of Omaha, Neb., appeared on statement by appellee First Nat. Bank of Omaha.

Before GARDNER, THOMAS, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order denying appellant's motion to vacate a consent judgment entered against him on December 28, 1945. To avoid confusion, the parties will be referred to as they were designated in the trial court. At all times pertinent to this action, defendant was and still is a retail clothier dealing in the sale of wearing apparel, at Omaha, Nebraska. On December 28, 1945, plaintiff filed a complaint charging defendant with the violation of the Emergency Price Control Act of 1942 and Maximum Price Regulation No. 580 as amended, in the way of overcharges in an amount exceeding $3,374.01 in the sale of merchandise and in the matter of the making and maintenance of records. The complainant demanded judgment for three times the alleged overcharges and for injunctive relief. With this complaint was filed a stipulation in writing, dated December 27, 1945, signed by attorneys for plaintiff and by the defendant personally. In this stipulation defendant waived the service of process, answer, and any and all defenses. He also waived hearing and the entry of findings of fact and conclusions of law, and consented to the entry of a final judgment incorporating the stipulation as a part thereof. The stipulation recited that,

"5. The single amount of the overcharges listed in said complaint is stipulated to be $3,374.01.

"6. It is hereby specifically stipulated that the claim of the plaintiff for treble damages in the amount of $10,122.03, subject to the approval of the court, is hereby settled and compromised, and is to be placed in judgment against the defendant for the amount of $5,061.01, together with the costs of said action in the amount of $15.00. The Attorney's docket fee is to be waived.

"7. Defendant specifically stipulates to the entry of a permanent injunction enjoining him from selling, delivering or offering to sell or deliver apparel, apparel accessories or any other items covered by Maximum Price Regulation No. 580 at prices in excess of the maximum prices established by said Regulation, or set forth on or determinable from his Pricing Chart which is on file with the Omaha District Office of the Office of Price Administration, and further that he may be enjoined from violating any of the pricing rules or record keeping rules set in said Regulation.

"8. It is further stipulated that Defendant shall, on or before February 28, 1946, prepare and file his amended base date pricing chart as required by and prescribed in said Maximum Price Regulation No. 580.

"9. A final judgment for money damages and for a permanent injunction in the form hereto attached and approved by the defendant, may be entered against the defendant without notice at any time hereafter."

Attached to this stipulation was a copy of the form of judgment proposed to be entered and this form of judgment was endorsed over the signature of defendant, "approved as to form." In pursuance of this stipulation judgment was entered on December 28, 1945. On the same date of the entry of the judgment plaintiff by his attorney filed a written satisfaction of the money part of the judgment.

On January 4, 1946, defendant filed a motion to vacate the judgment and praying that the First National Bank of Omaha, Nebraska, be made a party defendant and be enjoined from paying defendant's certified check in the sum of $5,061.01 given in satisfaction of the judgment. The motion as originally filed recited that during the month of December, 1945, agents of the plaintiff reported to defendant that he had been selling merchandise in excess of the ceiling price fixed; that he owed plaintiff a large sum of money in the nature of overcharges; that if defendant would make a settlement of the amount due the plaintiff there would be no court action nor publicity about the matter, but the transaction would be closed for all time; that at the

time defendant was short of help, was in the midst of a Christmas rush of business, and thinking that perhaps mistakes had been made in the operation of his business, deemed it best for the welfare of his business quietly to settle the matter and prevent litigation and undue publicity; that the agents of plaintiff represented to defendant that if he would pay the sum of $5,061.01, all claims on account of overcharges would be settled without publicity and without litigation; that defendant, relying upon these representations, without making examination of his records agreed to pay plaintiff the sum of $5,061.01, and "signed the pleadings which are on file in this case in this court; that at the time the defendant signed said pleadings and paid said sum of money he was convinced that no court action would be necessary and he would receive no publicity; that the pleadings which the defendant signed were filed by the plaintiff in this court and part of pleadings were published in the daily newspaper in Omaha, Nebraska, and the defendant did receive undue publicity which has been harmful to the defendant and his business." That by reason of the publicity referred to, defendant consulted attorneys and had a thorough check made of the records of his business to ascertain whether or not he had been selling merchandise in violation of the ceiling prices, and that the representations made by plaintiff's agents to induce him to make settlement were false and fraudulent; that he was induced to consent to an injunction and pay unjust demands without being properly advised of his rights and without a full knowledge of the demands and representations of plaintiff's agents and under a misapprehension of the facts. He then asked that he be authorized to stop payment on the certified check which he had issued; that the First National Bank of Omaha be made a party and be directed to stop payment on the check, and that the judgment be set aside. Attached to this motion and made a part of it was an affidavit of defendant's daughter which went solely to the question of whether or not defendant had sold merchandise in excess of the ceiling price. It contained no allegation with reference to any mis-representations made by the agents of plaintiff, and the motion was not supported by a proposed answer nor affidavit of merits.

The court entered an order making the bank a party, authorizing defendant to stop payment on the check for $5,061.01, holding the injunction entered in abeyance until the hearing on the motion to vacate, and setting the motion down for hearing. At a later date and before the hearing on the motion, the court by order directed defendant to prepare proposed answer to be tendered at the hearing, and thereafter defendant prepared and tendered a proposed answer to plaintiff's complaint, in which he denied the allegations of the complaint which charged him with a violation of the Price Control Act. 50 U.S.C.A Appendix, § 901 et seq. On leave of court defendant filed an amended and supplemental motion to set aside the judgment, reiterating the allegations as to fraudulent representations of plaintiff's agents and charging a breach of the alleged compromise agreement in securing and entering the judgment. Plaintiff filed response to defendant's motion, putting in issue all the allegations charging plaintiff's agents with fraud and misrepresentations. There were various continuances and certain orders relative to permitting the introduction of oral testimony at the hearing of the motion. The court, after hearing oral testimony on the issues raised by the motion to vacate the judgment, after hearing argument of counsel for the respective parties, and considering typewritten briefs filed by them, entered its order denying the motion to vacate, and it is from this order that defendant prosecutes his appeal.

In seeking reversal defendant in substance contends that: (1) the court erred in finding that the parties entered into a valid contract in December, 1945, and in failing to find that plaintiff repudiated the transaction of December, 1945, and in failing to find that defendant had a legal right to repudiate the transaction; (2) the court erred in determining that the stipulation of December 28, 1945, was valid; (3) the court erred in determining that the stipulation entered into by the parties on January 10, 1946, was of no force and ef-

fect; (4) the court erred in denying defendant the right to introduce evidence to show that he had a meritorious defense; (5) the court erred in failing to try the case on its merits and in overruling defendant's amended and supplemental motion to vacate the judgment.

Courts under proper circumstances have the power to open, correct, modify or vacate their own judgments, especially during the term at which they were entered. It is elementary that courts favor the trial of causes of action upon their merits, and hence, judgments by default or by confession are within the rule conferring power on courts to open or vacate their own judgments. The action of a trial court in either granting or refusing an application to vacate a judgment is generally speaking within the judicial discretion of the court. The discretion is not an arbitrary one to be capriciously exercised, but a sound legal discretion guided by accepted legal principles. While the authority to vacate a judgment during the term at which it was entered, stems from the common law independently of statute, many of the states have enacted laws embodying the rule of common law and expressly authorizing applications for relief against judgments even after the expiration of the term at which they were entered. Federal Rules of Civil Procedure, rule 60(b), 28 U.S.C.A. following section 723c, provides in part as follows:

"On motion the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken. A motion under this subdivision does not effect the finality of a judgment or suspend its operation. * * *."

This rule is substantially the same as the statutory provision of California, Minnesota, New York, and several other states. The proceeding by motion to vacate a judgment is not an independent suit in equity but a legal remedy in a court of law; yet the relief is equitable in character and must be administered upon equitable principles. Fraud and circumvention in obtaining a judgment are ordinarily sufficient grounds for vacating a judgment, particularly if the party was prevented from presenting the merits of his case. The burden of proving such fraud and misrepresentation is, of course, upon the applicant and fraud is not to be presumed but must ordinarily be proven by clear and convincing evidence. It must also be made to appear where the application is made by a defendant that he has a meritorious defense to the action. If, however, there are adequate allegations of a meritorious defense properly verified, no counter-showing will be received to refute the allegations of merits presented by the moving party. In the instant case the court accepted defendant's proffered answer and allegations with reference thereto as tendering in good faith a defense on the merits.

As to the alleged fraud and misrepresentations relied upon as grounds for vacating the judgment, it would serve no useful purpose to set out in detail the evidence before the trial court. Defendant contended that after examination of his files and records by plaintiff's representative he was accused of certain violations of regulations, including the making of sales over ceiling prices and that by deceit, fraud and intimidation, and by assurances of freedom from publicity and by concealment of a purpose to obtain a judgment or file a suit against him, he was induced to enter into a compromise settlement and to give his check for $5,061.01 in payment thereof, and that thereafter on request of a representative of plaintiff, he was induced to sign the stipulation for judgment without reading it and without having the contents disclosed to him, and that by use of the stipulation so obtained from him the plaintiff secured the judgment complained of. The plaintiff's representative, on the other hand, testified that she explained to the defendant that the settlement would involve the getting of a judgment for the amount which might ultimately be agreed upon and the entry of an injunction requiring his future compliance with the regulation, and that two checks would be required from him, one for the amount that might be agreed upon in settlement, and the other for $15.00 for court costs, payable to

the clerk of the United States District court. As to the question of publicity, she told the defendant that it was a matter of Federal Court record and she had no control over the matter and could not guarantee against publicity; that there would have to be a judgment and that that was the agency's only way to prevent further violations.

There was evidence that defendant asked for time to consider the proposition of settlement and to enable him to see an Omaha attorney and a friend of his who was chief of the Agency Price Division at Omaha. Defendant was handed a separate paper containing a notation of the amount of the two checks to be given in the event settlement were concluded, and it was upon the basis of the data shown on this slip that defendant later signed the two checks.

Generally, it may be said that the government representative specifically denied every allegation charging misrepresentation or fraud. The court did not try the case on affidavits, but heard the testimony of the witnesses in open court, and referring to the conflict in the testimony, particularly the charges with reference to the alleged misrepresentations made by the plaintiff's representative, the court found: "Those statements were squarely denied by Mrs. McAllister, and this court, in appraising the conflicting testimony, gives credence to the evidence of Mrs. McAllister, and not to that of Miss Assmann."

Referring to the conversations between defendant and his daughter on one part, and Mrs. McAllister on the other, the court found: "They were conducted in an atmosphere of cordiality and courtesy. In no phase of them was there any aspect of threat, intimidation, or coercion."

The court also specifically found: "By way of negative finding, the court now declares explicitly and very clearly that, upon the entire evidence, it finds generally that Assmann has wholly failed to sustain his charges of fraud, deceit, misleading or overreaching in any particular. * * * The court also finds that there was no concealment from Assmann on December 27, 1945, of the contents of the papers he signed or of the purpose thereof, though he did not then read them, and that full copies of all of them were left with him and the necessity of his filing an amended price chart under the injunctive order was drawn to his notice by Keedy, acting in behalf of the plaintiff."

In addition to the oral testimony produced by the plaintiff the court apparently gave some weight to certain surrounding facts and circumstances corroborative of plaintiff's proffered evidence. Among these was the fact that defendant was a man of intelligence with wide business experience. Before signing the stipulation he had signed two checks, one of which was payable to the clerk of the District Court, which plaintiff's evidence indicated was for the cost of entering judgment. If no court proceeding had been anticipated, it would manifestly not have been necessary to make this check of $15.00 payable to the clerk of the District Court. On the day following the making of these checks, defendant signed the stipulation for judgment and signed the approval as to the form of judgment endorsed on the proposed judgment.

The findings of the court are presumptively correct and should not be reversed unless clearly erroneous. It was within the province of the trial court to pass upon the credibility of the witnesses and the weight to be given to their testimony. Jackson County v. Dufty, 8 Cir., 147 F.2d 227; Kincade v. Mikles, 8 Cir., 144 F.2d 784. The order of the trial court, being sustained by substantial evidence, could not be held to be an abuse of discretion. Conceding, as the trial court did, that defendant's proffered answer pleaded a meritorious defense, defendant is without standing here because the court has found that his charges of fraud and misrepresentation were untrue, and it is not the province of this court to weigh the evidence nor to attempt to pass upon the credibility of witnesses.

The issue as finally resolved by the trial court was wholly one of fact. It is, however, urged that the court erred in not hearing the case on the merits because in a previous order entered on motion of the plaintiff and on stipulation of the parties, it was provided, "that either party

338

to this action be and is hereby given the right to introduce oral testimony on any question involved in this action." If, as defendant contends, this was an order that the cause be heard on its merits, it would have been idle to present his motion to vacate the judgment. The relief which he ultimately sought was the trial of the action on its merits. It is observed too that this order was entered in response to plaintiff's motion, in which it is specifically recited:

"That defendant's motion is not supported by any affidavit which would entitle him to the relief prayed for in said motion, there being no testimony or sworn statements of defendant or any other person, or any other competent evidence presented in support of said motion, other than the affidavit of Gretchen Assmann concerning matters not relevant to or directly in support of said motion.

"That plaintiff can not fully and adequately answer or respond to the motion of defendant to set aside the judgment heretofore entered on stipulation of the parties, unless he first has opportunity to examine or cross-examine the defendant and affiant, Gretchen Assmann, on the statements of their attorneys that they were induced by false and fraudulent representations and other inducements set forth in said motion."

It is further recited in this motion that the court should not consider defendant's motion "without hearing the witnesses and observing their demeanor in the courtroom, both on direct examination and on cross-examination." The order entered in response to this motion permitting either party to introduce oral testimony on any question involved was clearly interlocutory. The only matter before the court was whether the judgment should be vacated because of the alleged fraud and misrepresentations of plaintiff's agent and whether or not defendant proffered a defense on the merits. The court accepted defendant's answer as evidence that he had a defense to the action on its merits so that the oral testimony was properly directed to the charges of fraud and misrepresentation.

Convinced, as we are, that the court did not abuse its discretion in entering the order appealed from, it is affirmed.