GASPAR ROCA BACÓ, demandante y apelante, *v.* GRETEL C. THOMSON, demandada y apelada.

Número 11108.

*Sometido:* 3 de marzo de 1954. *Resuelto:* 12 de noviembre de 1954.

420

*Fiddler, González & Nido, F. Fernández Cuyar y Carlos J. Faure,* abogados del apelante; *Germán Rieckehoff,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Gaspar Roca Bacó presentó una demanda de divorcio contra su esposa Gretel C. Thomson en la Sala de Bayamón del Tribunal Superior, el 26 de noviembre de 1952. En su demanda alegaba que durante los primeros seis meses del año

1952, "la demandada ha maltratado repetidamente al demandante de palabras y obras, haciéndole víctima de humillaciones e insultos en presencia de terceras personas, acometiéndole, declarando reiteradamente su falta de cariño para el demandante y su intención de abandonar a Puerto Rico ella sola y regresar a Canadá, a tal extremo que en junio 16 de 1952 la demandada dejó el hogar conyugal. Además durante los meses de enero y junio de 1952 la demandada acometió al demandante y le hizo objeto de injurias e insultos, todo lo cual ha causado al demandante intensos sufrimientos físicos y morales, afectándole la salud y destrozando la tranquilidad del hogar".

El 29 de noviembre del mismo año la demandada presentó una contestación, firmada personalmente por la demandada, en que negó las alegaciones arriba expuestas, y solicitó se declarase sin lugar la demanda. El 10 de diciembre de 1952 el tribunal de Bayamón dictó una resolución en que indica que en el acto de conciliación celebrado entre las partes (habiendo dos hijos menores de edad), las partes manifestaron "su intención de divorciarse, no estando dispuestos a desistir de esta acción". El 12 de diciembre el tribunal de primera instancia dictó una sentencia declarando con lugar la demanda de divorcio por la causal de trato cruel e injurias graves, indicándose en la sentencia que el caso fué señalado para ser visto el mismo día 12 de diciembre, habiendo comparecido el demandante con su abogado, y habiendo él presentado prueba sobre la causal alegada. El mismo día 12 de diciembre la demandada presentó un escrito, firmado personalmente por ella, en que hacía constar que comparecía en su propio derecho y que, habiendo sido notificada de la sentencia, ella hacía "renuncia formal y expresa de su derecho a apelar contra dicha sentencia, queriendo y consintiendo en que la misma sea firme y definitiva desde esta fecha".

En el mes de mayo de 1953 la demandada, representada por abogados, presentó ante el Tribunal de Bayamón una moción "solicitando reapertura y para dejar sin efecto la sen-

tencia", por las razones expuestas en un *affidavit* de méritos, que se acompañó a la moción, y en el que la demandada expone, bajo juramento, en síntesis, lo siguiente:

(1) Que al iniciarse la acción y al dictarse sentencia había una estipulación firmada por ambas partes en cuanto a la custodia de los dos hijos menores de edad, incidental a un pleito de divorcio entre ambas partes que había estado tramitándose en la Sala de Mayagüez del Tribunal Superior, y que, tanto al radicarse la demanda en Bayamón como al dictarse sentencia, ambos cónyuges vivían juntos como marido y mujer.

(2) Que la demandada "se vió impedida de contestar la demanda debido a inescrupulosos engaños, severas amenazas e intencionada coacción moral y física de parte del demandante."

(3) Que al presentarse la demanda en Bayamón, "subrepticiamente", por el demandado, el tribunal de Mayagüez "dictaba una sentencia en la Vista sobre Estipulación de Custodia de Menores".

(4) Que "esta demandada por haber entrado ilegítimamente en territorio americano mediante engaños y falsas simulaciones que el demandante llevara a cabo ante las autoridades oficiales y ante ella misma ha estado sometida a constante amenaza por parte del demandante de ser deportada, especialmente durante los días en que fué notificada de esta demanda, cuando el demandante incrementando sus amenazas y perversidad la amenazó con que si contestaba la misma o trataba de consultar con algún abogado él notificaría a las autoridades de Inmigración de Puerto Rico de su estadía ilegal en este país;

(5) "Que el demandante valiéndose del evidente estado de indefensión de la demandada ha urdido una monstruosa confabulación con el avieso e intencionado propósito de privar a la demandada de los derechos y participación que en la sociedad de gananciales tiene; mediante compulsión, coacción y engaños, haciéndole firmar documentos que a esta fecha la demandante ignora su contenido, pues todo esto lo hacía el demandante aprovechándose del desconocimiento que la demandada tenía del lenguaje castellano y de la ley local;

(6) "Que los trámites seguidos para radicar la contestación a la demanda como así también la renuncia al término apelativo no se hicieron por la propia demandada ni con el consentimiento de ella. Tampoco ésta compró ni pagó por los sellos que aparecieron adheridos a las mismas apareciendo de los documentos

en poder del Tesorero de Puerto Rico que los mismos fueron comprados y pagados por persona que firma con el nombre de Chévere, quien no tiene relación de amistad, conocimiento o parentesco con la demandada y según los documentos que obran en poder de ésta, es la persona que diligenció el emplazamiento de la demandada, (sic) iniciada contra ella en el caso de epígrafe;

(7) "Que la demandada nunca vió ni leyó el texto y cuerpo de los documentos que firmaba inclusive la contestación porque el demandante no permitía que la demandada observara ni leyera los títulos y cuerpos de estos documentos y tan sólo le presentaba e indicaba la línea donde tenía que firmar y le decía: 'Sign here, trust me, you don't have to read the rest'.

(8) "Que a la demandada nunca le fué notificada oficialmente la sentencia de divorcio y que muy por el contrario el demandante le ocultaba fraudulentamente ese hecho haciéndole creer que aún existían los nexos de marido y mujer y bajo esta creencia siguieron viviendo juntos; llevando las relaciones normales y propias del estado de matrimonio aún después de la sentencia;

(9) "Que esta demandada no había recurrido a Corte después de constarle la existencia de dicha sentencia debido a que el demandante la engañaba diciéndole que habría de casarse nuevamente con ella y le negaba que existiera disolución del matrimonio".

A los documentos ya mencionados la demandada acompañó una contestación jurada a la demanda, en que niega los hechos alegados en cuanto a la causal envuelta, alega que existen "cuantiosos bienes gananciales" y expone diversas defensas especiales al efecto de que había sido el demandante quien había tratado a la demandada en forma cruel y la había hecho objeto de injurias graves, habiéndola castigado corporalmente, teniendo ella que recluirse en clínicas para recuperar de los golpes ocasionados por el demandante, habiendo tenido que "substituir sus dientes naturales con unos postizos"; que el demandante la había amenazado de muerte y la había injuriado de palabras. Solicita la demandada en esa contestación que se declare sin lugar la demanda.

El demandante presentó entonces una oposición a la moción para dejar sin efecto la sentencia, cuya oposición no está jurada. En ella el demandante niega los hechos expues-

tos en la moción y en la declaración jurada de la demandada, alegando el demandante que la totalidad del procedimiento seguido en el pleito de divorcio había sido correcto y que la contestación original de la demandada y su renuncia a su derecho a apelar de la sentencia habían sido hechas y presentadas en corte con el consentimiento de la demandada. En los autos ante este Tribunal, certificados por ambas partes, aparece la siguiente nota:

"La Moción Solicitando Reapertura y Para Dejar Sin Efecto la Sentencia, y la Oposición a dicha moción fueron sometidas por estipulación de ambas partes para resolución por el Tribunal Superior, Sala de Bayamón, sin presentación de prueba alguna por ninguna de las partes."

El 16 de julio de 1953 el Tribunal de Bayamón, sin haber oído prueba, dictó una resolución en que declaró con lugar la moción de la demandada y dejó sin efecto la sentencia ya dictada. Resolvió el tribunal a quo que no habiendo el demandante rebatido en una declaración jurada las alegaciones contenidas en la moción y en el affidavit de méritos de la demandada, esto es, que no habiendo controvertido el demandante lo expuesto bajo juramento por la demandada, mediante un "contra-affidavit", los hechos alegados por la demandada debían ser considerados como ciertos. El demandante ha apelado ante este Tribunal y ha señalado los siguientes errores:

"Primer error: Erró el tribunal inferior al permitir el planteamiento y resolver la controversia planteada por medio de una moción dentro del mismo caso bajo la Regla 60 (b), Reglas de Enjuiciamiento Civil.

"Segundo error: Erró el tribunal inferior al resolver la moción de la apelada basándose únicamente en el Affidavit de Méritos de la apelada y de la supuesta admisión de parte del apelante.

"Tercer error: La cuestión planteada por la moción de la apelada era una de carácter discrecional y el tribunal inferior abusó de su discreción al resolver en la forma que lo hizo."

■■ El apelante sostiene que los hechos expuestos por la demandada en su moción para que se deje sin efecto la

sentencia y en su affidavit de méritos constituyen una alegación al efecto de que la sentencia se obtuvo mediante fraude extrínseco practicado por el demandante y que, la Regla 60, de nuestras Reglas de Enjuiciamiento Civil, no autoriza tal fundamento como base para dejar sin efecto una sentencia. Señala que nuestra Regla 60 es reproducción de la Regla 60 federal, tal como leía antes del 17 de diciembre de 1946; que en el proyecto original de la Regla 60 federal se incluía expresamente el fundamento de "fraude", pero que al aprobarse finalmente tal regla, se eliminó tal concepto y que al enmendarse la Regla 60 federal en el año 1946 se incluyó expresamente tal motivo como base de anulación de una sentencia, y que todo ello es indicativo de la intención de no autorizar el fraude como fundamento para dejar sin efecto una sentencia.

Las alegaciones de la demandada conllevan una imputación de que la sentencia de divorcio se obtuvo mediante fraude extrínseco a la sentencia. La alegación de fraude extrínseco está predicada en la tesis de que un litigante ha estado impedido de presentar o dilucidar en juicio sus reclamaciones o defensas en virtud de la conducta fraudulenta de la otra parte, en contraste con el fraude intrínseco, que se refiere a las cuestiones inherentes al litigio, esto es, aquellas cuestiones actuales o potenciales que se plantearon o pudieron haberse planteado, refiriéndose el fraude extrínseco o colateral a la forma en que se obtuvo la sentencia y no a los méritos de la sentencia en sí. 49 C.J.S. 486 et seq. 269; 31 Am. Jur. 230, sec. 654, pág. 279, sec. 735; 3 Moore's *Federal Practice*, 3267, 3268, sección 60.03, primera edición; *United States* v. *Throckmorton*, 98 U. S. 61; *Vance* v. *Burbank*, 101 U. S. 514; *United States* v. *Beebe*, 180 U. S. 343; *Toledo Scale Co.* v. *Computing Scale Co.*, 281 F.488, confirmado en 261 U. S. 399; *Town of Boynton* v. *White Const. Co.*, 64 F.2d 190; *Steel* v. *St. Louis Smelting & Ref. Co.*, 106 U. S. 447; *Nuckolls* v. *Bank of California Nat. Ass'n.* 10 Cal.2d 266, 74 P.2d 264, 114 A.L.R. 708; *Flood* v. *Templeton*, 152 Cal. 148.

La Regla 60 federal tal .como leía antes del 1946, y tal como lee actualmente nuestra Regla 60, constituye una reproducción directa del art. 473 del Código de Enjuiciamiento Civil de California (art. 140 de nuestro Código), y fué adoptada deliberadamente del Código de California, por lo que conlleva la misma interpretación que se le daba por las cortes de California. Moore, ob. cit., pág. 3255, 3270, 3271; Moore and Rogers, "Federal Relief from Civil Judgments", 55 Yale L. J. 623; *McGinn* v. *United States,* Fed. Rules Serv., 60*b*51, *case no.* 3, 2 F. R. D.562; *Ledwith* v. *Storkan,* 2. F. R. D. 539; *U. S. for use of Kantor Brothers, Inc.* v. *Mutual Construction Corp.,* 7 Fed Rules Serv. 60*b* 24, *case no.* 1; *Fiske* v. *Bunder,* 125 F.2d 841. En California siempre se ha resuelto que los tribunales tienen el poder inherente de dejar sin efecto una sentencia cuando ha mediado un fraude extrínseco y que, por lo tanto, dentro de una interpretación liberal del estatuto, tal fundamento debe ser considerado, por ministerio de ley, como incluído en las modalidades o causas señaladas en el art. 473 del Código de Enjuiciamiento Civil de California, como base para dejar sin efecto una sentencia. Moore, ob. cit., pág. 3279, refiriéndose esas citas de Moore a la primera ed.; *Difani* v. *Riverside County Oil Co.,* 201 Cal. 210, 256 Pac. 210; *Britton* v. *Bryson,* 216 Cal. 362, 14 P.2d 502, un caso de divorcio; *Tomb* v. *Tomb,* 7 P.2d 1104; *Rhea* v. *Millsap,* 156 P.2d 941; *In re Estrem's Estate,* 16 Cal.2d 563, 107 P.2d 36; *Deyl* v. *Deyl,* 199 P.2d 424; *Cross* v. *Tustin,* 236 P.2d 142; *In re Basso's Estate,* 180 P.2d 923. Por lo tanto, tal es la interpretación que se le debe dar a la Regla 60, tal como fué adoptada del art. 437 del Código de Enjuiciamiento Civil de California. Es cierto que el primer proyecto de la Regla 60 federal, preparado por el Comité correspondiente, en mayo del 1936, incluía expresamente el concepto del fraude extrínseco, y luego se omitió tal modalidad al aprobarse la regla original. Pero, tal como se indica en 3 Moore 3278, 3279, primera ed., "aunque los primeros proyectos de las reglas también incluían los fundamentos de accidente y fraude,

el cambio en el lenguaje en el proyecto final no debe ser interpretado al efecto de que tales fundamentos quedan excluídos. El cambio se hizo para ajustar más estrechamente la Regla 60 a la fraseología de la disposición análoga del Código de Enjuiciamiento Civil de California, que ha funcionado muy bien en la práctica, en California". Algunas cortes federales han resuelto que, en vista de la omisión del concepto del fraude, bajo la Regla 60 no se permite tal causa como fundamento para una moción para que se deje sin efecto la sentencia. *Hadden* v. *Rumsey Products*, 96 Fed. Supp. 988, 992; *Shurtz* v. *Foster and Kleiser Corp.*, 29 Fed. Supp. 162, y véase comentario en 4 *Federal Rules Service* 945. Preferimos, sin embargo, el criterio contrario, establecido por otras cortes federales, al efecto de que au nbajo la Regla 60 federal tal como prevaleció antes de su enmienda en el año 1946, esto es, bajo la actual Regla 60 nuestra, el fraude extrínseco puede servir como base adecuada para una moción para que se deje sin efecto una sentencia. *Fiske* v. *Bunder*, 125 F.2d 841, 844; *Assmann* v. *Fleming*, 159 F.2d 332, 336, donde se resuelve que procede tal moción a base de una alegación de fraude, "cuando la parte se ha visto impedida de presentar los méritos de su caso". Resolvemos, por lo tanto, que, interpretando liberalmente la Regla 60, y considerando la realidad de que se trata de un poder inherente de los tribunales, y de que la Regla 60 fué adoptada con la interpretación que se le daba en California, el fraude extrínseco puede servir de base adecuada para una moción para que se deje sin efecto una sentencia.(¹) Incidentalmente, en el caso de *Universal Products Co.* v. *Root Refining Co.*, 328 U. S. 575, 580, resuelto antes de enmendarse específicamente la Regla

---

(¹) Se ha indicado que, en el caso de *Hazel-Atlas Co.* v. *Hartford-Empire Co.*, 322 U. S. 238, la Corte Suprema ha eliminado la diferencia entre el fraude intrínseco y el extrínseco, resolviendo que el fraude intrínseco puede también plantearse mediante una moción en el mismo litigio. Moore, Tomo 3, primera ed., suplemento del año 1946, pág. 253. Véanse además, *Publicker* v. *Shallcross*, 106 F.2d 949, cert.·denegado en 309 U. S. 624 y *Cowan* v. *Cowan*, 166 P.2d 21. Es innecesario resolver ese dilema en el caso de autos, ya que, aquí, la impugnación se refiere a un alegado fraude extrínseco.

60 en el año 1946, se establece, en un caso que envolvía la alegación de que una sentencia había sido obtenida mediante fraude extrínseco, se establece, que "el poder inherente de una corte federal de investigar si una sentencia ha sido obtenida mediante fraude está fuera de toda duda".

En el año 1946 se enmendó la Regla 60 federal para incluír expresamente el fraude, intrínseco o extrínseco, como fundamento para una moción para que se deje sin efecto una sentencia. El Comité Consultivo sobre enmiendas a las Reglas indicó lo siguiente (28 U.S.C.A., "Rules of Civil Procedure", Rule 60, pág. 312):

"El fraude, ya sea intrínseco o extrínseco . . . u otra mala conducta de la otra parte, son fundamentos expresos para un remedio por moción bajo la subdivisión (*b*) enmendada. *No hay razón sólida alguna para su exclusión.* La incorporación del fraude y cosas análogas dentro del ámbito de la regla elimina toda confusión en cuanto al procedimiento adecuado. Se ha resuelto que el remedio contra una sentencia obtenida por fraude extrínseco podía obtenerse por moción dentro de un 'período razonable de tiempo', que podría ser después que el período de tiempo señalado en la regla haya transcurrido. *Fiske* v. *Buder*, 125 F.2d 841; véase además, por inferencia, a *Bucy* v. *Nevada Construction Co.*, 125 F.2d 213. De otro lado, se ha sugerido que, en vista del hecho de que el fraude fué omitido de la Regla 60(*b*) original, como fundamento para un remedio, la acción independiente sería el único remedio apropiado. Comentario: El Efecto de la Regla 60 (*b*) sobre otros Métodos de Remedio Contra una Sentencia, 1941, 4 Fed. Rules Serv. 942, 945. La enmienda resuelve este problema convirtiendo el fraude en una base expresa para un remedio por moción . . ." (Bastardillas nuestras.)

El comentario transcrito se limita a reconocer la existencia previa de un problema de interpretación, y es compatible con la tesis de que el efecto de la enmienda fué aclarar expresamente lo que surgía implícitamente de la regla antes de la enmienda.

El tribunal de Bayamón resolvió que los hechos expuestos bajo juramento por la demandada no fueron adecua-

damente controvertidos por el demandante, ya que éste no juró su oposición a la moción para que se dejase sin efecto la sentencia, y no presentó un "contra-affidavit" que rebatiese el affidavit de méritos presentado por la demandada. En cuanto a este extremo, incurrió en error el tribunal a quo. No era necesario el que la oposición del demandante estuviese jurada, esto es, que el demandante negase, *bajo juramento*, los hechos expuestos por la demandada en su affidavit de méritos. No era necesario el que el demandante presentase un "contra-affidavit" para que quedasen planteadas las controversias, o *issues*, entre las partes con respecto a los hechos expuestos por la demandada y negados por el demandante en su oposición. La Regla 11 de Enjuiciamiento Civil dispone, en parte, que "excepto cuando específicamente se disponga otra cosa por regla o estatuto, no es necesario jurar las alegaciones ni acompañarlas de affidavit". Véase, *Waymouth Estate, Inc.* v. *Corte*, 63 D.P.R. 668. Tal como se indica en Moore's *Federal Practice*, Tomo 2, pág. 2105, sec. 11.03, "el juramento es la excepción, y no la regla. La veracidad y la honestidad en las alegaciones surgen del hecho de que ellas están firmadas, y no del juramento". (De la especificación que se hace en Moore de las alegaciones que aún requieren estar juradas, no se incluyen las oposiciones análogas a las del caso de autos.) (Al mismo efecto de la exposición de Moore, véanse *Hummel* v. *Wells Petroleum Co.*, 111 F.2d 883; *Franzen* v. *Du Pont de Nemours and Co.*, 36 F. Supp. 375; *Albert Dickinson Co.* v. *Mellos Peanut Co. of Ill.*, 179 F.2d 265. Bajo la Regla 11, la firma de un abogado es equivalente a un juramento, cuando el juramento no sea requerido específicamente por un estatuto o por una regla. *Russo* v. *Sofia Bros. Inc.*, 5 Fed. Rules Serv. 12*b*.35, *case no.* 2; 2 F.R.D. 80.

No hay estatuto o regla alguna que requiera que sea jurada la oposición a una moción para que se deje sin efecto una sentencia, o aun a un affidavit de méritos, que se una a tal moción. Por lo tanto, la oposición del demandante en este caso fué suficiente para controvertir y poner en *issue*, o esta-

blecer un conflicto adecuado en cuanto a los hechos alegados por la demandante.

En vista de lo anteriormente expuesto, el tribunal de instancia no podía resolver sobre la moción para que se dejase sin efecto la sentencia exclusivamente a base de las alegaciones de las partes. Cuando las alegaciones de una moción son controvertidas, la parte promovente debe sostener sus alegaciones mediante prueba satisfactoria. 37 Am. Jur. 508, sec. 16; Cf. *Brownfield* v. *South Carolina*, 189 U. S. 426. Con respecto a una moción para que se deje sin efecto una sentencia, el peso de la prueba recae sobre el promovente. 31 Am. Jur. 314, sec. 787; *Assmann* v. *Fleming*, supra, refiriéndose ese caso a una alegación de fraude extrínseco. Generalmente, los tribunales no deben dejar sin efecto una sentencia sin oír la prueba sobre la cual depende la solicitud de remedio. 31 Am. Jur. 315, sec. 788. En cuanto a una moción controvertida, para dejar sin efecto una sentencia, el tribunal debe oír a ambas partes, (49 C.J.S. 548, sec. 299) y debe celebrarse una vista. 49 C.J.S. 669, sec. 337; *McNac* v. *Chapman*, 223 Pac. 350. Aunque los tribunales tienen poderes discrecionales para dejar sin efecto sentencias, tal ejercicio de discreción debe basarse en prueba adecuada, y cuando se presenta una contestación responsiva a la moción, que plantee cuestiones o controversias sobre los hechos, sería un error el dejar sin efecto una sentencia exclusivamente a base de la petición de una parte, sin celebrar una vista. *Hamilton* v. *Sechrist*, 16 A.2d 671. Si las alegaciones en cuanto a tal moción están en conflicto, es la función del tribunal el considerar y pesar la prueba, y resolver el conflicto. *City of Pacific Grove* v. *Halmilton*, (Cal.) 224 P.2d 19. Una sentencia no puede ser dejada sin efecto en una forma arbitraria y, antes de que se pueda dejar sin efecto, la parte a cuyo favor se ha dictado la sentencia tiene derecho a ser notificada y a ser oída en una vista. *Hoppe* v. *St. Louis Public Service Co.*, 235 S.W.2d 347, 23 A.L.R.2d 846; *Morris* v. *Morris*, sobre divorcio, citado en 23 A.L.R.2d 853.

En el caso de *Kotkin* v. *Columbus*, 78 N.Y.S.2d 263, se indica, en parte, lo siguiente:

"Una moción para la apertura de una sentencia en rebeldía no puede ser resuelta sumariamente a base de papeles escritos, y debe celebrarse una vista . . . El tribunal en apelación entiende que la cuestión no puede ser satisfactoriamente resuelta sólo a base de los papeles escritos . . . Debe celebrarse una vista, y ese curso, indudablemente será el más saludable y el más concluyente para que se pueda lograr un resultado justo para todas las partes concernidas."

En *Universal Oil Products Co.* v. *Root Refining Co.*, supra, la Corte Suprema dijo lo siguiente, a la página 580:

"El poder inherente de una corte federal, de investigar si una sentencia se ha obtenido mediante el fraude, es incuestionable. *Hazel-Atlas Co.* v. *Hartford-Empire Co.*, 322 U. S. 238. El poder de desenterrar tal fraude es el poder de desenterrarlo en forma efectiva. Por lo tanto, una corte federal puede traer ante ella a todos aquellos que puedan ser afectados por el resultado de la investigación. Pero si los derechos de las partes han de ser adjudicados en tal investigación, las garantías usuales de un procedimiento adversario deben ser observadas. Sin duda, *si después de una audiencia adecuada,* el tribunal concluye que se ha practicado un fraude sobre la corte, o que el templo en sí de la justicia ha sido manchado, las partes responsables deben pagar las costas totales del litigio . . . Pero es obvio que una corte no puede privar a una parte victoriosa de su sentencia sin una vista adecuada." (Bastardillas nuestras.)

Una peculiaridad de este caso consiste en el hecho de que, según aparece de los autos, las partes estipularon que la moción y la oposición se sometieran a la resolución de la corte sin presentación de prueba alguna por ninguna de las dos partes. Generalmente, las estipulaciones son obligatorias para las partes y los tribunales deben respetarlas. Un ejemplo de ello lo sería una estipulación dando por probados determinados hechos o permitiendo que se admita determinada prueba. Pero el principio de obligatoriedad de las estipulaciones no es absoluto. Un tribunal no tiene necesariamente

que respetar una estipulación que sea contraria a las reglas establecidas de procedimiento, (*Economy Cash and Carry Cleaners* v. *Cleaning, Dyeing and Pressing Board*, 174 So. 829), o que prive a un tribunal de su poder y obligación de investigar los hechos y conceder remedios equitativos en el ejercicio de su discreción de acuerdo con los hechos reales. 83 C.J.S. 38, 39, sección 17; *Grant Luch Corp.* v. *Driscoll*, 29 A.2d 888, confirmado en 33 A.2d 900, certiorari denegado en 320 U. S. 801, resolviendo que es inefectiva una estipulación de que se resuelva un certiorari sin los autos originales; *Bowles* v. *Hudspeth*, 62 F.Supp. 803; *Laughlin* v. *Berens*, 118 F.2d. 193; *Gilkerson* v. *Baltimore & Ohio Ry. Co.*, 51 S.E.2d 767.

La estipulación hecha en este caso era prácticamente inefectiva, ya que era imposible para el tribunal a quo el resolver sobre la moción para que se dejase sin efecto la sentencia sin oír la prueba a ser presentada por las partes. Las alegaciones de las partes (moción, affidavit de méritos y oposición) plantearon controversias auténticas sobre los hechos, y tales controversias no podían ser resueltas a base de los documentos que precisamente planteaban esas controversias. No había razón alguna por la cual el tribunal tenía que preferir o considerar como ciertas las alegaciones de una de las dos partes, sin oír prueba sobre tal extremo. La estipulación no debe ser interpretada como una renuncia de la demandada a su moción para que se dejase sin efecto la sentencia o como una renuncia del demandante a su oposición. La demandada pudo haber hecho la estipulación bajo la impresión, errónea, de que, al no prestar el demandante una contra declaración jurada, él había admitido la veracidad de los hechos expuestos por la demandada. El demandante pudo haber firmado la estipulación bajo la impresión de que, al otorgarse la estipulación, la demandada no había sostenido ni descargado el peso de la prueba, que sobre ella recaía, para que se pudiese dejar sin efecto la sentencia y que, por lo tanto, por el hecho de haberse otorgado la estipulación, la moción de la demandada de-

bía haber sido declarada sin lugar. De todos modos, al hacerse la estipulación, las partes fueron, en la alternativa, o improvidentes, en cuyo caso habría margen para alegar que la estipulación no era obligatoria para el tribunal (83 C.J.S. 92, sec. 35), o trataron mutuamente de lograr determinadas ventajas técnicas, que deben quedar subordinadas a la conveniencia de llevar a cabo una investigación judicial de la realidad de los hechos.

Desde el punto de vista del demandante, él podría haber alegado que la moción de la demandada debía haber sido declarada sin lugar, ya que, al no presentar prueba, ella no había descargado el peso de probar su alegaciones. En *Buscher* v. *Mangan*, 59 So.2d 745, 746, resuelto en el año 1952, se resolvió, en parte, lo siguiente:

"El fraude nunca se presume, pero debe ser probado con evidencia clara y convincente. Los demandados, al estipular que tal cuestión fuese resuelta a base de la demanda y de la contestación, renunciaron al derecho a someter testimonio y prueba, y, por lo tanto, no sostuvieron el peso de la prueba que recaía sobre ellos para establecer el fraude."

Tal doctrina no debe ser aplicable a este caso. En bien de la justicia, lo más conveniente y lo más práctico es que se prescinda de la estipulación y que se celebre una vista sobre los méritos de la moción de la demandada, en cuya vista ambas partes tendrán la oportunidad de presentar prueba. Ese es el procedimiento más saludable y más justo. *Kotkin* v. *Columbus*, supra. La mejor práctica es celebrar vistas en cuanto a las mociones, y dar amplias oportunidades a ambas partes. Cf. *Amy* v. *Barceló*, 59 D.P.R. 661; *Pueblo* v. *Ramírez*, 50 D.P.R. 234.

*Debe revocarse la resolución apelada y devolverse el caso a la Sala de Bayamón del Tribunal Superior para que allí se sigan los procedimientos posteriores que no sean incompatibles con esta opinión.*

Los Jueces Asociados Sres. Sifre y Belaval no intervinieron.