**Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**The DOLORES FOOD SPECIALTY COMPANY, INCORPORATED, a Corporation, and James M. Corrova, an Individual, Defendants.**

**No. C–2–80–811.**

United States District Court, S. D. Ohio, E. D.

Jan. 7, 1982.

William S. Kloepfer, U.S. Dept. of Labor, Cleveland, Ohio, for plaintiff.

Victor D. Merullo, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

This case is before the Court on the defendants' motion to set aside a consent judgment pursuant to Fed.R.Civ.P. 60(b)(3) and (6). The plaintiff Secretary of Labor filed this civil injunction action against the defendants pursuant to Section 17 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. (hereafter the Act), on September 22, 1980. Concurrently, a stipulation waiving an answer, all defenses, and service of process and a consent judgment were submitted to this Court. The judgment was signed by the Honorable Robert M. Duncan, United States District Judge for the Southern District of Ohio, on September 29, 1980, and filed with the Clerk on September 30, 1980. The judgment enjoined the defendants from violating Sections 15(a)(2) and 15(a)(5) of the Act. On October 23, 1980, the de-

fendants filed the present motion to set aside the consent judgment.

On July 17, 1981, this Court held an evidentiary hearing and heard oral arguments on the defendants' motion. Upon consideration of the evidence presented at that hearing, the pleadings, and the affidavits submitted by the parties, the Court concludes the defendants' motion is without merit.

## I. THE FACTS

James M. Corrova is the owner of TAT Restaurant located at 34 North James Road, Columbus, Ohio. Mr. Corrova also operated a business known as TAT Restaurant located at 6887 East Main Street, Reynoldsburg, Ohio. Mrs. Dolores Corrova, wife of James M. Corrova, owns all of the shares of Dolores Food Specialty, Inc., located at 1320 Beechwold Road, Columbus, Ohio, and is president of that corporation.

On March 14, 1980, Mr. Jesus Martinez, a compliance officer for the Wage and Hour Division of the Department of Labor, contacted Mr. Corrova about investigations to be made by the Department of Labor. During this meeting Mr. Martinez explained the procedures that he would follow in his investigation. Following this first meeting with Mr. Martinez, Mr. Corrova suffered a heart attack and was hospitalized for approximately three weeks.

Mr. Martinez conducted his investigation with the full cooperation of the defendants. On March 24, 1980, Mr. Martinez held a conference with Mrs. Corrova. Mr. Corrova did not attend this conference due to his recent heart attack. Mr. Martinez explained to Mrs. Corrova that his investigation had led him to conclude that overtime compensation had not been correctly paid at the three related businesses. Mr. Martinez also explained that he had found $10,089.32 in back wages due to twenty-one employees as a result of the overtime violation. Mrs. Corrova agreed to future compliance with the Act and asked for a delay in working out an agreement concerning the back wages because of Mr. Corrova's health.

During a telephone conversation on April 11, 1980, Mr. Corrova indicated to Mr. Martinez that he would agree to a five-month installment schedule for repaying back wages. Payments were to begin on May 1, 1980. On April 30, 1980, Mr. Corrova called Mr. Martinez and indicated that he would be unable to meet the five-month installment schedule. At that time Mr. Corrova was referred to Mr. Martinez's supervisor, Mr. George N. Kastor.

On May 15, 1980, Mr. Corrova met with Mr. Kastor to discuss Mr. Martinez's findings. At that meeting Mr. Kastor informed Mr. Corrova that the investigation was a legal proceeding and that Mr. Corrova could consult with legal counsel. Mr. Kastor explained to Mr. Corrova the finding of a violation of the Act and also explained the Department of Labor's policy regarding payment of back wages. The entry of a consent decree was fully explained to Mr. Corrova at this time. There was no agreement reached at this meeting and Mr. Kastor agreed to hold the matter in abeyance.

During a telephone conversation on July 31, 1980, Mr. Corrova informed Mr. Kastor that he wanted a payment schedule of twenty-four (24) monthly installments. Mr. Corrova met with Mr. Kastor on September 8, 1980, at Mr. Kastor's office. Mr. Kastor once again informed Mr. Corrova of his right to legal counsel and explained what the case involved. Mr. Kastor read over the consent judgment and explained this document to Mr. Corrova. At that meeting Mr. Corrova indicated he did not feel he needed legal counsel and he signed the consent judgment.

## II. DISCUSSION

### A. *Legal Standards of Review.*

Fed.R.Civ.P. 60(b) states:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On a motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

The granting of a motion to set aside a judgment under the provisions of Fed.R.Civ.P. 60(b) is a matter addressed to the sound discretion of the trial court. *United States v. Work Wear Corp.*, 602 F.2d 110, 114 (6th Cir. 1979); *Douglass v. Pugh*, 287 F.2d 500, 502 (6th Cir. 1961); *L. M. Leathers' Sons v. Goldman*, 252 F.2d 188, 190 (6th Cir. 1958). Modification of a judgment pursuant to Rule 60(b) is extraordinary relief which requires the showing of special circumstances. *United States v. Work Wear Corp., supra; EEOC v. Safeway Stores, Inc.*, 611 F.2d 795 (10th Cir. 1979). The burden is upon the movant to bring himself within the provisions of Rule 60(b). *Smith v. Kincaid*, 249 F.2d 243, 245 (6th Cir. 1957).

Among the various factors to be considered by the trial court in determining whether to set aside a judgment are: (1) the general desirability that a final judgment should not be lightly disturbed; (2) the policy that Rule 60(b) should be liberally construed for the purpose of doing substan-

tial justice; (3) where there has been no consideration of the merits, whether in the particular case the interest of deciding cases on the merits outweighs the interest in orderly procedure and in the finality of judgments, and whether there is merit in the defense or claim; and (4) any other factor that is relevant to the justice of the judgment under attack, always bearing in mind that the principle of finality of judgments serves a useful purpose for the litigants, the courts, and the public. 7 *Moore's Federal Practice*, ¶ 60.19 (2d ed. 1979). Once the movant has established the existence of one of the Rule's six reasons, he still must show the existence of a meritorious claim or defense which would be presented in the event the motion is granted. *Marshall v. Monroe & Sons, Inc.*, 615 F.2d 1156 (6th Cir. 1980).

### B. *Defendants' Argument Under Rule 60(b)(3).*

Under Fed.R.Civ.P. 60(b)(3), fraud, misrepresentation, or other misconduct by an adverse party in obtaining a judgment may constitute grounds for relief. *Assmann v. Fleming*, 159 F.2d 332, 336 (8th Cir. 1947). The defendants contend that "there was misrepresentation on the part of the Department of Labor in causing defendant Corrova to sign the consent judgment." Specifically defendants have alleged that Mr. Martinez claimed that "his word was law" and that Mr. Kastor told Mr. Corrova that the papers to be signed were needed so that the negotiated settlement could be approved by the higher office in Cleveland.

In support of their motion, the defendants have submitted the affidavit of defendant Corrova. This affidavit states in part:

(9) That this investigator [Mr. Martinez] represented to me that both the sole proprietorship and the corporation constituted one business which I now believe is legally incorrect.

(10) That I met with the supervisor of the investigator who told me that I needed to sign certain papers so that this level investigation could be concluded and go to another level.

(11) That on the day of the meeting I was extremely ill and using a large amount of medication.

(12) That I did not understand the legal significance or meaning of a consent judgment nor did I understand the future implications from this consent judgment.

(13) That I was never advised to obtain an attorney concerning the nature of this document or my legal rights.

(14) That I believe that I was misled and misinformed as to the law by the Department of Labor and as to the purpose of the consent judgment.

(15) That since I was not part of the investigation which occurred during my illness, I did not know that I could challenge the findings of the investigator and the basis for his findings since they were not fully explained to me.

Mr. Corrova's oral testimony was partially consistent with the allegations in his affidavit.

The Government presented affidavits and testimony which directly contradict Mr. Corrova's testimony. The affidavit of Mr. Kastor states in part:

2. I held a second level conference with Mr. James M. Corrova at the Columbus Area Office on May 15, 1980. At the conference, I explained the Fair Labor Standards Act to him and that Compliance Officer Jesus Martinez had found $10,089.32 in back wages for overtime compensation violations. He indicated that he would need a long time to pay. We discussed the entry of a consent decree and I fully explained this to him. I also advised him that he could consult an attorney, but he said he did not want one. We agreed to hold the matter in abeyance because of his health.

3. I next heard from Mr. Corrova on July 31, 1980. He wanted twenty-four monthly installments. The consent decree was again explained and

the decree and installment payments were tentatively agreed to.

4. I next met Mr. Corrova on September 8, 1980. At that meeting the proposed consent decree was presented to him. It was explained to him again and I read the Stipulation and Judgment to him. He was again advised of his right to legal counsel. He indicated that he understood it and signed it saying that he did not need an attorney.

The Government also submitted the affidavit of Mr. Martinez which states in paragraph five (5) that on April 11, 1980, Mr. Martinez and Mr. Corrova discussed back wages and agreed on a five-month installment schedule which was prepared and delivered to the defendant one week later. Mr. Martinez's oral testimony was consistent with this statement.

■ This Court must determine whether the defendants have sustained their burden of proving that the consent judgment was obtained through fraud and misrepresentation. Regardless of whether the defendants must establish their case by clear and convincing evidence as the Government argues, see *Jennings v. Hicklin*, 587 F.2d 946, 948 (8th Cir. 1978); *Assmann v. Fleming*, 159 F.2d 352 (8th Cir. 1947), or whether a lesser burden is placed upon the defendants, this Court finds that the defendants have failed to meet their burden of proof. The Court finds that defendants have failed to sustain their charge of fraud, deceit, misleading, or overreaching. The only evidence submitted by the defendants was the testimony of Mr. Corrova, both oral and written, and this testimony was squarely denied by Mr. Martinez and Mr. Kastor. This Court, in appraising the conflicting testimony, gives credence to the testimony of Mr. Kastor and Mr. Martinez.

This Court specifically finds that the meetings between the Government agents and Mr. Corrova were properly conducted with the goal of informing Mr. Corrova of his rights and the legal violations that had been discovered. It does not appear that Mr. Martinez or Mr. Kastor attempted to mislead Mr. Corrova, an experienced businessman. Indeed, it appears to this Court that the Government agents attempted to accommodate the defendants by granting extensions of time and arranging meetings. The numerous extensions of time would have enabled the defendants to obtain legal counsel if such assistance had been desired.

### C. *Defendants' Argument Under Rule 60(b)(6).*

■ The defendants also argue that Fed. R.Civ.P. 60(b)(6) is applicable to the present case. Specifically, the defendants argue that Mr. Corrova's health problems at the time he signed the consent judgment amount to another "reason justifying relief from the operation of the judgment." Fed. R.Civ.P. 60(b)(6). Although the consent judgment in this case could be vacated if Mr. Corrova's health problems had affected his competence to consent, this Court does not find that Mr. Corrova's health problems amounted to a "reason justifying relief from the operation of the judgment" pursuant to Fed.R.Civ.P. 60(b)(6). The Court notes that the meetings between the parties took place over a period of seven months. The Court specifically finds that Mr. Martinez did not try to take advantage of Mr. Corrova after his heart attack. In stead, Mr. Martinez arranged to meet with Mrs. Corrova, president of Dolores Food Specialty, Inc., and postponed giving Mr. Corrova the results of the investigation.

Additionally, the Court concludes that Mr. Corrova was not so affected by his medication that he could not comprehend the nature and effect of his acts. To the contrary, the evidence indicates that Mr. Corrova was fairly relaxed at the September 8, 1980, meeting at which the consent judgment was signed. According to the affidavit of Mr. Corrova, Mr. Corrova had considered cancelling this meeting but chose not to cancel. Such a conscious decision does not reflect the type of incoherent behavior that would justify setting aside the judgment in this case.

The Court further notes that Mr. Corrova's health did not prevent him from travel-

ling to Mr. Kastor's office. While this Court accepts Mr. Corrova's assertion that he was using medication, it does not appear that the medication had impaired Mr. Corrova's ability to think or to travel.

### III. CONCLUSION

The defendants have failed to establish any of the six reasons enumerated in Rule 60(b). Therefore, relief may not be granted under Rule 60(b), and this Court need not ascertain whether the defendants have shown the existence of a meritorious claim or defense which would be presented in the event the motion were granted. Accordingly, the defendants' motion to set aside the consent judgment pursuant to Fed.R.Civ.P. 60(b)(3) and (6) is DENIED.

IT IS SO ORDERED.